UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY PRICE,

                Plaintiff,

v.                                                                                          1:18-CV-0219
                                                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | JUSTIN JONES, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JOSHUA KERSHNER, ESQ.<br>LAURA BOLTZ, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 13.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.       RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1966. (T. 144.) She completed two years of college. (T. 212.) Generally, Plaintiff's alleged disability consists of high blood pressure, neck/back/shoulder pain, hypertension, depression, and anxiety. (T. 211.) Her alleged disability onset date is December 15, 2010. (T. 144.) Her date last insured is December 31, 2013. (*Id.*) Her past relevant work consists of slitter operator, manager, marketing trainer, and telemarketer. (T. 212)

### B. Procedural History

On July 7, 2011, Plaintiff applied for Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 144.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 9, 2012, Plaintiff appeared before the ALJ, William Weir. (T. 82-117.) On April 24, 2013, ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 16-36.) On December 30, 2014, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Plaintiff timely sought judicial review in this Court, the parties stipulated to remand Plaintiff's case for further proceedings, and on March 4, 2016 the United States District Court for the Western District of New York entered an order remanding the case for further proceedings. (T. 691.) The AC vacated the Commissioner's previous final decision on April 23, 2016 and ordered a new hearing. (T. 694.)

On August 21, 2017, Plaintiff appeared before ALJ Marilyn Zahm. (T. 605-659.) On November 13, 2017, ALJ Zahm issued a written decision finding Plaintiff not

disabled under the Social Security Act.  (T. 578-604.)  Plaintiff again timely sought judicial review in this Court.

    **C.**    **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 584-598.)  First, the ALJ found Plaintiff met the insured status requirements through December 31, 2013 and Plaintiff had not engaged in substantial gainful activity since December 15, 2010.  (T. 584.)  Second, the ALJ found Plaintiff had the severe impairments of: lumbar spondylosis/lumbago; cervical spondylosis; and right upper extremity loss of range of motion. (T. 585.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 589.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work.  (T. 590.)[1]  The ALJ determined Plaintiff was able to:

> lift and carry up to ten pounds occasionally, sit up to two hours without interruption and up to eight hours total out of an eight-hour workday, stand up to one hour without interruption and up to four hours total out of an eight-hour workday, and walk one hour without interruption and up to four hours total out of an eight-hour workday.  [Plaintiff] was unable to reach overhead with her right upper extremity, but she was occasionally able to reach in all other directions.  [Plaintiff] was occasionally able to handle, finger, feel, push, and pull with her right upper extremity. [Plaintiff] was unable to climb ladders and scaffolds, crouch, or crawl, but she was occasionally able to climb stairs and ramps, balance, stoop, and kneel.  [Plaintiff] was occasionally able to work at unprotected heights and around humidity and wetness.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

3

(T. 590.)  Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 596-597.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ did not consider treatment notes from the Niagara County Department of Mental Health.  (Dkt. No. 9 at 18-22.)  Second, and lastly, Plaintiff argues the ALJ erred in making her decision "without a medical opinion." (*Id*. at 22-26.)  Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 12.)

### B.   Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues substantial evidence supported the ALJ's finding at step two that Plaintiff's depression and anxiety were non-severe.  (Dkt. No. 11 at 9-13.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A.  Step Two

Plaintiff essentially argues the ALJ failed in her step two determination that Plaintiff's mental impairments were non-severe because the ALJ failed to consider portions of Plaintiff's mental health record which "clearly demonstrate" a severe mental impairment.  (Dkt. No. 9 at 18-22.)

At step two of the disability analysis, the ALJ determines whether the plaintiff has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c)[2].  The regulations define "basic work activities"

---

[2]   Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was

6

as "the abilities and aptitudes necessary to do most jobs," including "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id*. § 404.1522(b).

Plaintiff "bears the burden of presenting evidence establishing severity." *Taylor v. Astrue,* 32 F.Supp.3d 253, 265 (N.D.N.Y. 2012), *adopted,* 32 F.Supp.3d 253 (N.D.N.Y. 2012).  Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims.  *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  *Taylor,* 32 F.Supp.3d at 265 (quoting *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995)).  Rather, "to be considered severe, an impairment or combination of impairments must cause more than minimal limitations in [a plaintiff's] ability to perform work-related functions." *Windom v. Berryhill,* No. 6:17-CV-06720, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

Here, any error in finding Plaintiff's mental impairments non-severe at step two would be harmless.  As explained in *Guerra*:

> courts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings.... [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to

---

filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

>be non severe, an error in failing to identify all severe impairments at Step 2 is harmless. Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error.

*Guerra v. Comm'r of Soc. Sec.,* No. 1:16-CV-0991, 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul,* 778 F. App'x 75 (2d Cir. 2019) (internal quotations and citations omitted); *see also Reices-Colon v. Astrue,* 523 F. App'x 796, 798 (2d Cir. 2013) (where ALJ excluded the plaintiff's anxiety disorder and panic disorder from his review, finding harmless error because the ALJ identified other severe impairments and proceeded with the subsequent steps, in which the ALJ specifically considered the plaintiff's anxiety and panic attacks).

Here, the ALJ's decision contained a thorough discussion of Plaintiff's mental impairments at step two through step four; therefore, any error the ALJ may have made at step two is harmless. At step two, the ALJ summarized Plaintiff's mental health treatment notations, including objective medical observations and treatment. (T. 585-589.) The ALJ also considered Plaintiff's mental impairments in the four broad areas of mental functioning for evaluating mental disorders and in the Listing of Impairments under 20 C.F.R., Part 404, Subpart P, App'x 1. (T. 587-588.) The ALJ determined Plaintiff had mild limitations in her ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (*Id.*) The ALJ ultimately determined Plaintiff's mental impairments caused no more than mild limitations in any functional area and were therefore non-severe. (T. 589.)

Although the ALJ determined Plaintiff's mental impairments were non-severe, she discussed the impairments at subsequent steps. In her step four analysis, the ALJ summarized Plaintiff's subjective complaints, including her feelings of doom and not liking to be around other people. (T. 590-591.) The ALJ discussed opinion evidence connected to Plaintiff's mental impairment and afforded the opinion of State agency medical consultant, Dr. Totin, "very little weight." (T. 595.) Dr. Totin opined in the record contained "insufficient evidence" to make a determination. (T. 374.) The ALJ concluded a "remarkable amount" of evidence concerning Plaintiff's mental health was submitted after Dr. Totin reviewed the record. (T. 595.) The ALJ referred to her step two analysis finding mild limitations and determined such limitations were consistent with other evidence in the record, particularly Plaintiff's Global Assessment of Functioning ("GAF") scores. (*Id.*) The ALJ also concluded the record supported improvement with treatment and mental status examinations revealed only a mildly depressed mood. (*Id.*) The ALJ noted there were no hospitalizations due to mental health impairments nor did any treating mental health source provide work related functional limitations. (*Id.*)

Plaintiff asserts the ALJ failed to consider evidence provided by Niagara County Department of Mental Health dated October 2012 through December 2013. (Dkt. No. 9 at 18-22.) In general, an ALJ is not required to discuss every piece of evidence, further, lack of discussion does not imply the ALJ did not consider the evidence. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted . . . An ALJ's failure to cite

9

specific evidence does not indicate that such evidence was not considered"). Contrary to Plaintiff's assertion, the ALJ did not "ignore" treatment notations.

Here, although the ALJ did not specifically cite to the treatment notations from October 2012 through December 2013, the ALJ did discuss the evidence from Niagara County Mental Health. (T. 587.) The ALJ acknowledged treatment notations from Niagara County Mental Health were "recently submitted" and a "substantial portion" of those records post-dated Plaintiff's date last insured. (*Id.*)

Further, the ALJ specifically concluded the mental health treatment notations from Niagara County Mental Health were "generally consistent with the earlier mental health treatment notes." (T. 587.) Indeed, in May 2011, Sharon MacDougal, LCSW, observed Plaintiff's mood was mildly depressed, but her memory was not impaired, and she was able to attend and maintain focus. (T. 455.) On October 21, 2013, Paige Glynn, LCSWR, also observed Plaintiff's mood was mildly depressed, her memory was not impaired, and she was able to attend and maintain focus. (T. 866.) In both March 2011, and April 2013, Arvind Samant, M.D., observed Plaintiff's underlying cognitive functioning and memory were grossly intact. (T. 449, 821.)

Ultimately, the later treatment records were not substantially different from the earlier records. Dr. Samant's examinations consistently showed Plaintiff was cooperative, alert, and oriented and her underlying cognitive functions and memory were grossly intact further supported the ALJ's decision that she had no severe mental impairment. (T. 449, 461, 470, 482, 524, 532, 821, 838, 854.) Ms. MacDougal and Ms. Glynn consistently recorded normal or near normal mental status findings, including normal attention, concentration, and memory. (T. 445, 450-455, 459, 462, 465, 467,

471, 476, 480, 484, 486, 492, 496, 499, 501, 504, 506, 509, 511, 515, 518, 521, 526, 529, 534-537, 540, 782, 785, 789, 794, 797, 802, 806, 811, 814, 818, 823, 826, 831, 835, 840, 843, 848, 851, 856, 859, 866, 871.) Therefore, the ALJ did not ignore treatment notations. The ALJ properly assessed the treatment notations and ultimately the notations demonstrated a similar level of impairment as other evidence in the record.

Overall, the ALJ's step two determination was proper and supported by substantial evidence. In the alternative, any error at step two would be harmless. The ALJ properly assessed the evidence in the record pertaining to Plaintiff's mental health impairments, including evidence from Niagara County Mental Health. Here, despite diagnoses of mental health impairments and treatment, substantial evidence suggested such impairments did not prevent Plaintiff from performing the basic mental demands of unskilled work.

**B.    RFC Determination**

Plaintiff argues the ALJ erred in her mental RFC determination because she made her decision "with no opinions on Plaintiff's mental health" and the record "did not contain sufficient information to craft an RFC statement." (Dkt. No. 9 at 22-26.)

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden

is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c).

The ALJ is obligated to formulate a plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone.  *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018).  The ALJ did just that in this case.  The RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision."  *Trepanier*, 752 F. App'x at 79; *see also Monroe v. Com'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (rejecting argument that remand was required because ALJ discounted the only medical opinion such that "there was no competent medical opinion that supported the ALJ's RFC determination.").  Where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity," lack of a medical opinion is not necessarily required.  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013).

As outlined above, the ALJ properly determined at step two Plaintiff's mental impairments were non-severe and therefore did not prevent Plaintiff from performing the basic mental demands of work.  Further, any error at step two was harmless because the ALJ discussed Plaintiff's alleged limitations due to mental impairments at step four and determined the RFC did not require additional mental limitations. The ALJ specifically noted that, while she found Plaintiff's depression and anxiety to be non-severe, she considered the limiting effects of all Plaintiff's impairments, severe and non-severe, when formulating Plaintiff's RFC.  (T. 585.)  Overall, the ALJ did not commit legal error in formulating an RFC absent a medical opinion.  The ALJ properly

considered all of the evidence in the record as a whole and formulated an RFC based on that evidence.

Further, contrary to Plaintiff's argument, the ALJ was not required to recontact a treating source for a retroactive opinion.  (Dkt. No. 9 at 25.)  The ALJ is not required to develop the record any further when the evidence already presented is "adequate for [the ALJ] to make a determination as to disability."  *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  The record was sufficient for the ALJ to make a determination.  The record contained numerous treatment notations which included objective observations by providers and mental status examinations and Plaintiff's testimony.  And Plaintiff was represented by counsel since at least 2010.  (T. 39); *see Bushey v. Colvin*, 607 F. App'x 114, 115-116 (2d Cir. 2015) (ALJ's obligation to develop record is lessened where plaintiff was represented by counsel at all stages of her application process).

In sum, the ALJ properly assessed the evidence at step two of her determination and her determination was supported by substantial evidence.  Although the ALJ found Plaintiff's mental impairments to be non-severe, the ALJ thoroughly discussed those impairments at step four.  The ALJ properly determination Plaintiff's RFC and substantial evidence supported the ALJ's determination Plaintiff's mental impairments did not cause any additional mental limitations that would preclude unskilled work.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:   July 27, 2020

William B. Mitchell Carter
U.S. Magistrate Judge